## Uhler v. Uhler

*John W. Beyer and James F. Coho,* for plaintiff.
*John F. Pyfer, Jr.,* for defendant.

HUMMER, *J.,* March 15, 1985—

## PROCEDURAL HISTORY

Presently before the court is a petition for special relief filed by Gloria T. Uhler, defendant in the above-captioned divorce action. Respondent is Irvin V. Uhler, plaintiff in the divorce action. Petitioner seeks an award of exclusive possession of the premises located at 2610 Old Orchard Road, Lancaster County, Pa. Respondent requests that the petition be dismissed.

Also before the court is a request by petitioner for a list of marital and premarital assets allegedly taken by respondent from a storage area. In addition, petitioner requests an opportunity to inspect these items. Respondent's answer alleges that a list of the property has been or will be provided; respondent's memorandum of law in response to defendant's petition for special relief states that inspection of the

property will be permitted, provided that the inspection is done at a reasonable and convenient time.

## FACTS

The home located at 2610 Old Orchard Road was purchased by respondent in 1960, three years before the parties' marriage. The parties resided together in the marital home until September 1983, when respondent vacated the premises. Petitioner resided alone in the home until February 1984, when it was destroyed by fire.

The residence is now being rebuilt with the home insurance proceeds and will soon be ready for occupation. According to testimony produced at two support hearings, respondent has indicated his desire to move into the residence at 2610 Old Orchard Road, even though he is now residing in a trailer in New Providence. Respondent is presently living with his nurse and friend, Esther Rankin, and respondent intends to permit Ms. Rankin to live at the 2610 Old Orchard Road residence as well.

Petitioner, who is presently residing in a townhouse at the Chateau D'Eden, also wishes to return to the residence, and further asks that she be granted possession of the residence to the exclusion of respondent. In support of her claim, petitioner contends that she is only receiving $1,200 per month in spousal support and $218 per month in Social Security benefits. She argues that respondent's financial position is much better than hers, and contends that, since she resided in the residence alone for the five months before the fire, the status quo should be maintained and she should be awarded exclusive possession of the home. Petitioner has brought this action under the Divorce Code, and has made no allegations of abuse on the part of respondent. Petitioner is 62 years old.

Respondent is over 70 years old, and has retired. He has had several illnesses, including cancer and a heart condition and, at the time of the support hearings, was taking several medications. Respondent contends that petitioner has no right to reside in the residence, as it is his alone, contending that he *permitted* petitioner to reside there during the five-month period prior to the fire. Respondent also notes that the spousal-support order entered on petitioner's behalf already took into consideration the amount which petitioner pays each month for rent. Further, respondent contends that the $1,200 spousal-support order is one-third of his income, and is, therefore, the legal limit allowed.

Respondent further contends that petitioner improperly raised factual allegations in her brief and notes that there are several allegations made by petitioner which have been denied by respondent, raising factual issues which must be addressed in a hearing. The court, however, will address the petition and answer without a prior hearing, as even accepting as true all of the factual allegations made by petitioner, the court is not convinced that petitioner is entitled to her requested relief.

## DISCUSSION

Under §401(c) of the Divorce Code, Act of April 2, 1980, P.L. 63, P.S. §401(c), Pennsylvania courts are given the following power:

"In all matrimonial causes, the court shall have full equity power and jurisdiction and may issue injunctions or other orders which are necessary to protect the interests of the parties or to effectuate the purposes of this act, and may grant such other relief or remedy as equity and justice require against either party or against any third party over

whom the court has jurisdiction and who is involved or concerned with the disposition of the cause."

This provision grants extraordinary powers to the court, and has been applied in several ways. For example, in Lazovitz v. Lazovitz, 307 Pa. Super. 341, 453 A.2d 615 (1982), the Superior Court confirmed the trial court's power to enter an injunction under this section in order to protect a party's rights to equitable distribution of property. In Lynne v. Lynne, 44 Bucks Co. L. Rep. 290 (1984), the court, using its extraordinary powers under section 401(c) of the code, granted the wife's request for equitable relief and ordered that the husband pay delinquent mortgage and tax payments in order to preserve the marital assets for equitable distribution. Section 401(c) of the code has also been used to enforce personal rights; Laxton v. Laxton, 71 Del. Co. 424 (1984). In Laxton, the court exercised its extraordinary power and entered a decree of divorce. Plaintiff refused to proceed with the divorce, even though a master's report recommending divorce had been filed five and one-half years earlier. Because of plaintiff's "deliberate inaction," the court found that plaintiff had in fact attempted to "delay the entry of a final decree for the selfish purpose of effectively preventing defendant from continuing his personal life and holding him hostage under her economic demands." The court found that equity and justice demanded the entry of the final decree.

Under §102 of the Divorce Code, 23 P.S.§102, a declared policy of the Commonwealth is to:

"(4) Mitigate the harm to the spouses and their children caused by the legal dissolution of the marriage."

Finally, and perhaps the most important statutory section in the case presently before the court, is sec-

tion 401(h) of the Divorce Code, 23 P.S.§401(h), which provides:

"The court may award to one, each or both of the parties the right to live in the family home for reasonable periods of time."

This section grants the court the power to make an award, after a complete hearing, at the close of the action. Several Pennsylvania common pleas courts have determined, and this court is in cautious agreement, that §401(h), in conjunction with the provisions of §401(c) and §102, permits the court to make an award of exclusive possession of the marital residence when the divorce action is still pending.

In Glick v. Glick, 37 Berks Co. L. Rep. 326 (1981), the court set the stage for an interim award of exclusive possession of the marital home when it denied defendant's preliminary objection to plaintiff's claim for exclusive possession of the marital home. Defendant contended that the court had no power to award plaintiff the exclusive possession of the home. In denying defendant's demurrer, the court noted on page 327:

"Since the court's equitable powers under the code are so broad and since the code clearly recognizes the right of one spouse to live in the family home after the divorce, there is clearly no reason why such relief may not be granted during the pendency of a divorce proceeding."

In Smith v. Smith, 18 D.&C.3d 703 (1981), the court held a hearing to examine allegations made by the wife under the Protection From Abuse Act, Act of October 7, 1976, P.L. 1090, as amended; 35 P.S. §10181 et seq. Upon a review of the pleadings and the testimony, the court found that the husband's actions did not amount to the type of behavior addressed by the act. However, the court still

excluded the husband from the marital residence pending the final divorce property distribution (1) because the husband had voluntarily removed himself from the residence leaving the wife and the children there, and (2) in order to avoid physical contact and confrontation between the parties. In so ordering, the court relied on the Divorce Code generally, stating that under the code, the court had "broad equity power to award temporary exclusive possession of the marital home to one of the parties," 18 D.&C.3d at 709.

The Allegheny County Court of Common Pleas has also entered an order awarding exclusive possession of the marital home to a spouse, Wood v. Wood, 131 Pittsburgh L.J. 123 (1983). The court had previously awarded custody of the children to the wife and had entered a bifurcated divorce decree. Upon determining that (1) the children would be subjected to continued strife should the parties continue to reside together, and (2) the wife was without the means to provide another home in which she and the children could reside, the court held that the wife should be granted exclusive possession of the marital residence. In making this award, the court reviewed the stated policy of the Commonwealth under §101 of the Divorce Code, 23 P.S.§101(a)(3) and (4), regarding the welfare of the family and the mitigation of harm to the parties and their children caused by the dissolution of the marriage. It also relied on §401(c) of the code, 23 P.S.§401(c), which grants broad equity power, and 401(h) of the code, 23 P.S.§401(h), which permits the court to award possession of the residence to one of the parties as part of a final decree. 131 Pittsburgh L. J. at 124.

Recently a Berks County court permitted the exclusive possession of the marital residence to the

wife in spite of the fact that she had previously vacated the marital residence. Thomas v. Thomas, 76 Berks Co. L. Rep. 212 (1984). The Thomas court reviewed a situation where the divorce complaint was filed in February, 1984, and a protective order was entered on April 24, 1984, enjoining each party from abusing or harassing the other. The wife had previously left the marital residence with the children, but returned after a court order was entered requiring the wife to return all the household goods and furnishings which she had moved when she established a separate residence. There was also an indirect criminal contempt petition against the husband with respect to altercations which occurred between the parties after the wife and children returned to the marital residence. Following these incidents the wife vacated the residence and was residing with the children in a woman's shelter.

The Thomas court cited §102 of the Divorce Code, which sets forth the legislative policy of giving "primary consideration to the welfare of the family rather than the vindication of private rights or the punishment of matrimonial wrongs," and to "mitigate the harm to the spouses and their children caused by the legal dissolution of the marriage." It noted that the children would be subjected to "continued acrimony" should both parties and the children reside in one residence. 76 Berks Co. L. Rep. at 213. Observing that the children were to remain with the mother, the court felt that it would be unnecessary and possibly injurious to uproot them from their familiar surroundings. In awarding the home to the wife, the court compared the employment of the parties and noted that while the wife was employed near the home, the husband was unemployed and there was no evidence that any of

husband's prospective future employment would be in the immediate area of the home.

The Lancaster County Court of Common Pleas has had two opportunites to examine situations where a spouse sought possession of the marital home to the exclusion of the other spouse. In Martinez v. Martinez, no. 248 February term 1981, the Honorable Paul M. Mueller, Jr., entered an order dated February 14, 1983, which granted exclusive interim possession of the marital home to the wife and children. In Martinez, Judge Mueller examined a situation where the husband had voluntarily removed himself from the marital home in May 1981. During the period between May 1981 and February 1983, the husband resided with his girlfriend. At the time of the hearing he admitted that the woman with whom he had previously resided was still his girlfriend. The husband testified that he had no desire to reconcile with the wife, but had moved back into the residence solely for economic reasons. Judge Mueller found that the parties' children, ages 13 and 9, were affected by the husband's presence in the house, and ordered him to remove himself from the residence.

In Hoover v. Hoover, no. 4 September term 1983, the Honorable Ronald L. Buckwalter entered an order dated February 17, 1984 which granted exclusive possession of the marital home to the husband. The facts, as alleged in the husband's petition to exclude the wife, were that she had voluntarily vacated the residence in August 1983, and moved to Indiana. The wife had not stayed overnight in the home since August 1983 until February 13, 1984, when she moved her possessions back into the residence. The parties had already signed an agreement regarding custody and visitation and negotiations concerning the property division and marital dissolu-

tion were ongoing. The husband contended that the wife had moved back into the home in order to harass him and to keep him from getting a divorce. Even more importantly, he alleged that the wife's unwelcome, unilateral return would be harmful and disruptive to the parties' child. After a hearing on the matter, Judge Buckwalter ordered the wife to vacate the premises.

Although the Pennsylvania appellate courts have not had an opportunity to address this issue, the New Jersey Superior Court has reviewed the issue whether a spouse can be excluded from the marital premises absent a showing of actual physical danger or emotional injury to the remaining spouse and children. In Degenaars v. Degenaars, 186 N.J. Super. 223, 452 A.2d 222 (1982), the New Jersey Superior Court held that a spouse may be excluded from the marital residence merely because that spouse has been living apart from the marital residence for a period of time and for no other reason.

In Degenaars, the husband had moved out of the home voluntarily and had absented himself as an overnight resident for approximately 17 months. During this time the wife and children remained in the home and planned and lived their lives as if the husband were no longer a resident of the home. The husband then moved back into the marital residence without prior warning and took over the master bedroom, compelling the wife to move into another bedroom with one of the children.

The Degenaars court noted that the situation presented was pendente lite and framed the following issue:

"Should the mental and emotional health and welfare of the [wife] and children be compromised by the ever present knowledge that defendant can

move in, out and about the marital home with impunity?"

In answering this question in the negative, the court found that it would be inimical to the best interests of the wife and children to permit their emotional and physical lives to be traumatically invaded by the husband's unilateral decision to resume residency in the marital home. It determined that the best interests and welfare of the wife and children would be best served by maintaining the status quo ante as initiated by the husband himself. The court ruled that it had the power and jurisdiction to make the order, both by legislative fiat and through its inherent equitable jurisdiction to grant the relief sought by the wife.

In deciding the case, the New Jersey Superior Court relied on the broad powers vested in the court by the legislature:

"Pending any matrimonial action brought in this state or elsewhere, . . . the court may make such order . . . as to the care . . . and maintenance of the children, or any of them, as the circumstances of the parties and the nature of the case shall render fit, reasonable and just. . . ." N.J.S.A.2A:34-23. The court also paid particular attention to the welfare of the children. It noted that the parens patriae jurisdiction of the court protected the interests of the children, especially in matrimonial litigation.

Voluntary removal from the residence, a significant amount of time in absence, and the presence of children in the marital home who are negatively affected by a spouse's return, are all common factors of the cases above in which it was determined that the spouse should be excluded from the marital premises during the pendency of the divorce. Although each case must be considered individually, the most important consideration is the presence of

children in the home, and their emotional welfare. Although the court does not intend to foreclose exclusive pendente lite possession of the home to a spouse who has no children, a spouse without children will have to present an even more compelling situation in order to persuade the court that exclusive possession is in order. Further, the presence of children in the home will not, in and of itself, sway the court to award exclusive possession. As stated by the Honorable Harriet J. Mims in Glick v. Glick, supra, "[E]xcluding a spouse from his or her residence [during the pendency of a divorce proceeding] is not a remedy that will be awarded lightly." 37 Bucks L.Rep. at 329.

The case at bar does not present a situation which would compel this court to enter an award of exclusive possession of the home. The "marital" residence has been unoccupied by either party since it was destroyed by fire in February 1984. According to the record in the domestic relations hearing, it was originally respondent's desire to exclude petitioner from the residence (Domestic Relations 1881-1983, October 31, 1984; N.T. 151-152).

Both parties have now expressed a desire to return to the residence. Petitioner further requests that her return to the residence preclude respondent's return. Although it may be true that respondent presently has more money available to him, petitioner has been awarded an adequate sum for spousal support. Upon review of the record, it is clear that petitioner has not brought to the court's attention any circumstances to convince the court that exclusive possession of the home is in order.

The court feels that the allegations presently before it are in the realm of equitable distribution and should be addressed by the special divorce master. There is some question regarding the extent to

which the residence purchased by respondent three years prior to the marriage is marital property; this can be determined by the special master.

Upon a review of the case law, and for the reasons stated above, the court will refuse to grant petitioner's request for exclusive possession of the residence located at 2610 Old Orchard Road. The equitable remedy of exclusive pendente lite possession of the "marital" home is an award which is to be used sparingly. The situation presented by petitioner does not give rise to the protections afforded by the Divorce Code.

It appears from respondent's answer to petition for special relief and memorandum of law, that respondent is willing to comply with petitioner's request for a list of personal property in respondent's possession and for an opportunity to view the personal property. Accordingly, respondent will be directed to comply with petitioner's request regarding the personal property.

ORDER

And now, this March 15, 1985, upon review of Gloria T. Uhler's petition for special relief and Irvin V. Uhler's answer to petition for special relief and the briefs submitted thereon, it is hereby ordered and decreed:

(1) Petitioner's request for exclusive possession of the residence located at 2610 Old Orchard Road is denied;

(2) Petitioner's request for a list of all items removed from the storage area, and for an opportunity to view these items is granted. Respondent is directed to provide petitioner with a list of these items within 10 days. Respondent is further directed to provide petitioner with access to inspect the property at a time reasonable and convenient for both parties.